ISRAEL GIBBS

*v.*

ALBERT GRANT and others.

Where the title to land is not in A at the time of erecting a building, and he has no legal consent from the owner, mechanics liens thereon must be postponed to a purchase-money mortgage given afterwards by A when he had acquired title, although the building was almost finished.

---

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. G. M. Shipman*, for complainant.

*Mr. J. F. Dumont*, for defendants Levy and Popper.

THE CHANCELLOR.

Prior to the 14th of April, 1874, Israel Gibbs agreed with Albert Grant that he would lend the latter $900, to be secured by a mortgage to be given by the latter on two lots of land in Warren county, one of which was then owned by Joseph Hilbert, but which Hilbert had previously agreed to sell and convey to Grant for the sum of $600. Grant had, when the agreement for the loan was made, commenced the erection of a dwelling-house on that property, and had procured the material therefor, to a very considerable extent at least, on credit. The mortgage to Gibbs was delivered immediately after the deed from Hilbert to Grant was delivered, and as part of the same transaction, Grant being unable to obtain the deed until he made a payment on account of the purchase-money, for which payment he relied on the money borrowed from Gibbs. $300 of that money was, on the delivery of the deed, paid over to Hilbert accordingly, and he, in consideration of that payment, delivered the deed. Of the $900, the amount of the loan, $600 were paid to Grant on the delivery of the mortgage. Part of the sum so paid was, as before stated, paid to Hilbert on account of purchase-money, and part was paid by Grant to workmen who had been employed in the building of the house. The rest of the mortgage-money was withheld until the assignment of a policy of insurance on the building, which Gibbs was to have as collateral security, should have been made. It was paid over to Grant in May, 1874.

The deed from Hilbert to Grant is dated on the 1st day of April, 1874, and was recorded on the 14th of that month. The mortgage to Gibbs is dated on the last-mentioned day, and was recorded on the 16th, two days afterwards. Subsequently, and in the summer and fall of 1874, persons who

had furnished materials for the house filed their claims of lien, under the mechanics lien law, against the house and lot. Those claims were prosecuted to judgment and execution, and the property was sold under the latter to Morris Levy and Isidor Popper, who were then, as they still are, the holders of the second mortgage upon the property. The contest in this suit is between them, as such purchasers, and Gibbs, as mortgagee, and the question is, whether the mortgage of the latter is entitled to priority over the lien claims.

Prior to the time when Gibbs's mortgage was delivered, Grant had no title to the mortgaged premises. The act by which he received his title was contemporaneous with the delivery of the mortgage to Gibbs. The money received from Gibbs on the delivery of the mortgage alone enabled him to obtain the title. The property was not liable at that time to any claim of lien for the materials which had been sold to him for the building; for he had not, up to that time, been the owner, nor had he had the requisite consent to bind the owner. The lien claims were filed against him as owner. Between the time when the mortgage was made and the time when it was recorded, no materials were furnished by either of the lien claimants, except (according to the bill of particulars in the lien claim) a small amount—three bushels of lime, of the value of less than a dollar—furnished by the defendant O. N. Perry, on the 15th of April, 1874; and Grant swears, and is not contradicted, that Perry knew, before the mortgage was given to Gibbs, that he had no title to the land and was about to obtain the money to get it from Gibbs on mortgage of the property. It may be remarked, in this connection, that Grant swears that when the mortgage to Gibbs was given, the building was finished, except the building of the porch, and that all the plastering had been done. Luse, Gibbs's attorney, who negotiated the loan and attended to all the business thereof for Gibbs, testifies that, when seen from the road, the building appeared to be "about completed."

Grant's seizin of the property was merely instantaneous; for, as soon as he received the deed, he mortgaged the property to Gibbs. The mortgage, therefore, is entitled to priority over the lien claims to the extent of the amount which it purported to secure. *Macintosh* v. *Thurston*, 10 *C. E. Gr.* 242; *Paul* v. *Hoeft*, 1 *Stew.* 11; *Lamb* v. *Cannon*, 9 *Vr.* 362; *Moroney's Appeal*, 24 *Pa. St.* 372.